## Chesapeake & Ohio Railway Co. v. Commonwealth.

(Decided September 20, 1912.)

### Appeal from Shelby Circuit Court.

1. Criminal Law—Separate Coach Act—Section 795, Kentucky Statutes—Evidence—Rejection of—Prejudicial Error.—Where, under an indictment for violation of the separate coach act (Section 795, Kentucky Statutes), the real issue was whether or not the coach or compartment contained signs in plain letters indicating the race for which it was set apart, it was not prejudicial error to reject evidence of a conversation between the conductor and a passenger which tended merely to show that the coach was intended for colored people.

2. Same—Statement of Trial Court—Prejudicial Error.—Where on a trial for violation of the separate coach act the court, in excluding certain evidence, stated that the real issue was whether or not the cards were up indicating the race for which the coach or compartment was intended, this statement was not prejudicial error in view of the fact that the Commonwealth sought a conviction mainly on the ground that such cards were not up, and the further fact that the entire issue was submitted to the jury by proper instructions.

3. Verdict—Sufficiency of Evidence—Credibility of Witness—Question for Jury.—Where a witness for the Commonwealth testifies to one state of facts, and a witness for the defendant testifies to the contrary, it cannot be said that the verdict of the jury is flagrantly against the evidence merely because the witness for the Commonwealth makes statements in regard to other matters contrary to the testimony of other witnesses, as such statements affect only the credibility of the witness, and that is a question for the jury.

WILLIS, TODD & BOND for appellant.

JAMES GARNETT, Attorney General and CHAS. H. MORRIS, Assistant Attorney General for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Appellant, Chesapeake & Ohio Railway Company, was indicted by the grand jury of Shelby County for violation of section 795, Kentucky Statutes, providing a penalty for a failure on the part of a railroad company to furnish separate coaches or cars for the transportation of white and colored passengers, with each separate coach or compartment bearing in some conspicuous place appropriate words in plain letters indicating the race for which it was set apart. Trial was had, and the jury found appellant guilty and fixed its punishment at a fine of $500. From the judgment predicated on the verdict this appeal is prosecuted.

The record discloses that on January 30, 1911, C. & O. train No. 21, from the east, arrived at Ashland about three hours and a half late. It was the custom of the company when this train was an hour or more late to make up a special train at Lexington for the purpose of accommodating passengers and carrying mail. On the day in question, a special train, consisting of an engine and two coaches, was made up at Lexington and sent out on the time of train 21. Shortly after leaving Frankfort, some negroes boarded the train and took seats in the front coach, and continued to ride therein until the train reached Shelbyville. Judge Polsgrove, L. W. Morris and one or two others, who were on the train, testified to this fact, and to the further fact that they did not see any signs or cards in the coaches indicating the race for which the coach or compartment was

set apart. Their evidence, however, is of purely a negative character, as they admit that they did not look for such signs or cards. Sam Webster, another witness, swears that he was on the train in question, and saw Mr. Morris and Judge Polsgrove, and says that he did examine the coach he was in, and did not see any sign or card indicating the race for which it was set apart. This witness also stated that the train in question consisted of four coaches, and that he saw some ladies on the coach who got on at Bagdad and Christiansburg. There was a colored fellow smoking a cigarette, but he saw no white people smoking. There were five or six negroes in the coach. He was in the second coach next to the engine. The train was a regular passenger train. It was a little late.

Appellant's evidence is to the effect that on the occasion in question, because of the lateness of train 21, it made up the train in question of two coaches, which constituted all of the equipment that it had at Lexington. The coach next to the engine was intended as a coach for colored persons. The conductor in charge of the train testifies emphatically that there were signs in the coaches indicating the race for which they were set apart. Joseph Johnson, the car cleaner at Lexington, testified that the signs were in the coach when it came there, but he does not say that they were posted in a conspicuous place.

It is first insisted that the court erred in the rejection of competent evidence offered by appellant. It appears that while Mr. Morris was testifying, he referred to a conversation had with the conductor of the train. The attorney for the Commonwealth cautioned him not to tell what the conductor said. The conversation was excluded by the court. Counsel for appellant objected, and avowed that if the witness were permitted to answer he would say the conductor was insisting on the witness leaving the car, as it was the colored coach. Afterwards, Judge Polsgrove, who was called as a witness by the Commonwealth, was permitted to detail all that took place between him and the conductor. If it be true that the conductor was insisting on the white people leaving the first coach, this would be a circumstance tending to show that this coach was set apart for colored people, and what the conductor said to the white passengers was, therefore, competent. It is the duty

of the railroad company under the statute in question, not only to furnish separate coaches or compartments, but to have in each separate coach or compartment in some conspicuous place, proper words in plain letters indicating the race for which it was set apart. A failure in either respect subjects the railroad company to the penalty provided by the statute. C. & O. Ry. Co. v. Com., 21 Ky. L. R., 228. The evidence in question tended only to support the company's defense that separate coaches were furnished. The weight of the evidence in the case is to the effect that the front coach was intended for colored people. The case, however, seems to have been tried out upon the theory that the company failed to have signs or cards indicating the race for which the coach was intended. That being true, the rejection of the evidence in question was not such as to prejudice appellant's substantial rights.

It is further contended that the court erred in making the following statement in the presence of the jury in excluding the evidence of Morris with reference to the conversation between the conductor and Judge Polsgrove:

"The issue is whether the railroad furnished separate compartments and signs in plain letters indicating the coach the races were to ride in; there is no question here as to whether or not the negroes rode in the white coach or white persons in the negro coach, but the question is whether or not the signs were up. I don't think that question is competent."

In the first part of this statement the court clearly stated the issue. In the latter part he said that the issue was whether or not the signs were up. In making this statement, he evidently referred to the real issue upon which the Commonwealth was attempting to make out its case, and while the latter part of the statement was not technically correct, yet in view of the fact that it was the real issue upon which the court expected the case to turn, and upon which doubtless it did turn, and the further fact that the true issue was submitted to the jury by an instruction which is not subject to criticism, we conclude that appellant was not prejudiced by the statement of the court.

Lastly, it is insisted that the verdict is not sustained by the evidence. In this connection, we are referred to the fact that the only witness who testified in a positive

and emphatic way that the necessary signs were not posted was the witness, Sam Webster, and that his testimony in other respects varies materially from that of all the other witnesses. It is insisted that because Webster said that there were four coaches in the train, whereas there were only two; that it was a regular train, when it was a special, that the train was late, when it was on time, and that there were ladies in the coach, when there were not, he must have been on a different train from the one in question. Inasmuch, however, as Webster says that he saw Morris and Polsgrove on the train, and Morris says that he thinks he saw Webtser, there can be but little doubt that Webster was on the train in question. In view of the fact that the conductor testified one way, while Webster testified another, the inconsistencies in Webster's testimony with reference to other matters were but facts going to his credibility, and that was a question for the jury. Under these circumstances, we cannot say that the verdict is palpably against the evidence.

Being of the opinion that the evidence is sufficient to sustain the verdict, and finding no error in the record prejudicial to the substantial rights of the appellant, it follows that the judgment should be affirmed, and it is so ordered.